DECISION AND JUDGMENT ENTRY
This is an appeal from a Hocking County Common Pleas Court, Juvenile Division, judgment finding Jayme Blevins (D.O.B. 1-12-95) to be a dependent child and ordering that she remain in the temporary custody of her natural father, James Blevins, appellee herein. The child's natural mother, Michelle Ellis, appellant herein, assigns the following error for our review:[1]
 "THE TRIAL COURT ERRED IN PLACING JAYME BLEVINS WITH JAMES DWAYNE BLEVINS CAUSING HER TO BE SEPARATED FROM HER SIBLINGS."
The facts in this case are largely undisputed. Appellant Michelle Ellis is married to Rodney Ellis and is the natural mother of three (3) daughters, to wit: Brittany Walden (D.O.B. 9-17-92)[2]; Jayme Blevins (the minor child at issue herein)[3]; and Virginia Ellis (D.O.B. 9-17-98).[4] The Ellis family (including the three girls) lived for a period of time with Joel and Virginia Brofford, Michelle's mother and step-father, before moving into their own home in Logan in the early part of 1999.
On October 14, 1999, Rodney Ellis came home to find that Michelle had not done laundry. This led to an argument and, at one point, Rodney Ellis threw a stroller at Michelle. The stroller hit Brittany on the arm. The fight escalated and culminated with Rodney Ellis throwing a glass bowl at his wife, knocking her to the floor and jumping on top of her to choke her. Brittany then jumped on her step-father's back and tried to pull him off her mother. Brittany was apparently successful because, at some point, Rodney Ellis called the police to report that he had been attacked by his wife. The authorities arrived and, after investigating the incident, arrested him on a charge of domestic violence. Rodney Ellis was released the following day, but a protection order required that he have no contact with Michelle or with Brittany.
On November 23, 1999, caseworkers from Hocking County Children Services (HCCS) interviewed Brittany at school in response to a referral. The child told them of the above noted incident and gave other examples of domestic violence in the family. Brittany explained that she was fearful of her stepfather and felt it necessary to protect her younger sisters from him as well. The caseworkers also spoke with Jayme who told them much the same thing. Michelle Ellis was then interviewed and disclosed that her husband, despite the protection order, had returned home when he left jail and that he was living in the residence. The police arrested Rodney Ellis that very same day.
On November 30, 1999, HCCS initiated three separate actions and alleged that each child was dependent as a result of the events which transpired in their home. The trial court placed Brittany and Virginia in the temporary custody of their maternal grandmother (Mrs. Brofford), and placed Jayme in the temporary custody of her natural father, James Blevins.
Several months later, Mr. Blevins filed a motion for "permanent transfer of custody" of Jayme. Michelle and her mother (Mrs. Brofford) responded with their own motion asking for modification of the court's previous order so that custody of Jayme would be restored to one of them. Further, they asked for the adoption of a case plan that would call for reunification of all three (3) children with their mother.
The matter came on for an adjudicatory hearing on February 22, 2000. Rodney Ellis admitted that he had violated the protection order by returning home and Susan Collins, an HCCS employee, testified as to her interviews with family members and the results of her investigation into the case. The trial court ruled from the bench finding, by clear and convincing evidence, that Brittany, Jayme and Virginia were dependent children. All sides then agreed to proceed immediately to disposition which proved to be somewhat more contentious.
During the dispositional phase of the proceeding, the parties presented evidence to disparage the other's parenting abilities. It was undisputed that Mr. Blevins had alcohol problems in the past and has several DUI convictions. He claimed, however, that he had received counseling for this problem and that he had stopped consuming alcohol a year prior to the hearing. His wife, Tammy Blevins, corroborated this new found sobriety. The uncontroverted evidence also showed that Mr. Blevins had a steady job as a restaurant manager in Columbus and that he and his wife had a very "appropriate" home where Jayme would have her own bedroom. Michelle Ellis accused Mr. Blevins of having used drugs in the past, and of mentally and physically abusing her, but she offered no other evidence to substantiate those claims.
Likewise, Mr. Blevins accused Mr. Brofford (Michelle's step-father) of using drugs, but offered no proof to support that claim.[5] Evidence was also adduced to suggest that Michelle did not fully appreciate the impact that the domestic violence incidents in the household had on her children. Ms. Collins, who testified during the adjudicatory phase of the hearing, related that Michelle had told her she did not feel there was any need for a protection order against her husband and that she wanted Rodney Ellis back in the home. It was also uncontroverted that Michelle had not complied with several "case plan goals" set out by HCCS for her to regain custody of the children. In particular, she had not found employment, obtained her own place to live or completed counseling.[6] Some concern was also expressed that her husband, Rodney Ellis, had not undergone counseling or taken the required "anger management classes."[7]
There were no strong opinions, one way or the other, by any of the investigating parties as to what was the best disposition alternative for the minor children. All of them generally agreed that Brittany and Virginia should remain in the custody of their maternal grandmother (Mrs. Brofford). As to Jayme, however, Mrs. Olvera opined that she thought it in the child's best interest to remain with her father, Mr. Blevins. The witness conceded that she had "no problem" with placing the child with Mrs. Brofford, but that she leaned toward Mr. Blevins retaining custody because he and his daughter had bonded during the time they had been together. The guardian ad litem filed a report recommending that Jayme be placed with her grandmother, Mrs. Brofford, because "it only [made] sense to keep the children together, to avoid further disruption in their lives." Nevertheless, the guardian expressed that he "had no concerns about Mr. Blevins' ability to care for his daughter" and noted that he "would not object if the court placed Jayme with her father." The guardian changed his recommendation at the end of the hearing, however, and advised the court that after listening to the evidence, he preferred to see Jayme placed with her father rather than her maternal grandmother.
The trial court took the matter under advisement and, on February 28, 2000, rendered a lengthy and detailed decision that repeated its finding that the children were dependent as a result of the domestic violence in their household. See R.C. 2151.04. On the issue of custody, the court noted that the "long range goal for the minor children" was to be reunified with their mother. This goal, however, is contingent on Michelle and Rodney Ellis satisfying and completing the tasks set forth in the court's judgment entry and in the case plan. Meanwhile, the court ordered that Brittany and Virginia remain in the temporary custody of their maternal grandmother, Mrs. Brofford. The court further held that Jayme remain in her current placement (with her father). In reaching that decision, the court expressed that it considered both "the unity of the family doctrine" as well as "the best interest of each child." This appeal followed.[8]
Michelle argues in her assignment of error that the trial court erred by ordering Jayme to remain in the temporary custody of James Blevins. We disagree.
Our analysis begins from the premise that if a child is adjudicated dependent, the court may place that child, inter alia, in the temporary custody of either parent or a relative. R.C. 2151.353(A)(2). The choice between dispositional alternatives for dependent children is left to the sound discretion of the trial court. In re Knight (Mar. 22, 2000), Lorain App. Nos. 98CA7258 98CA7266, unreported; In re Evens (Feb. 2, 2000), Summit App. No. 19489, unreported; In re Collier (Feb. 4, 1992), Athens App. No. CA-1494, unreported. A reviewing court will not reverse that choice absent a showing of an abuse of discretion. In re Hulsey (Sep. 12, 1995), Adams App. No. 95CA599, unreported; In re Berry (Dec. 12, 1990), Franklin App. No. 90AP-850, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landis v.Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140,1142; Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440,448, 659 N.E.2d 1242, 1249; State ex rel. Solomon v. Police Firemen'sDisability Pension Fund Bd. of Trustees (1995), 72 Ohio St.3d 62, 64,647 N.E.2d 486, 488.
Appellate courts are admonished that, when applying the abuse of discretion standard, they are not free to substitute their own judgment for that of the trial court. See State ex rel. Duncan v. Chippewa Twp.Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254, 1258; In reJane Doe 1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, 1184;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308. Indeed, in order to show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254,256, 662 N.E.2d 1, 3.
In the case sub judice, the trial court rendered an exceedingly thorough and well-reasoned opinion detailing its reasons for Jayme's continued placement with her father. The court found that: (1) Mr. Blevins has a "stable work history" and a "good home with ample room for the family"; and (2) Mr. Blevins's wife (Tammy Blevins) was employed and was "a good care giver to Jayme." The court also noted that Jayme had adjusted to the Blevins household and was "attending a good preschool program."
Conversely, the trial court expressed concern that Michelle lived with her parents, had no home of her own, was unemployed and had a history of "unstable and at times violent relationships that resulted in three children to three fathers and a series of live-in relationships with the men and family members all impacting the minor children." Although Mrs. Brofford was deemed to be an "excellent care giver," the court noted that she and her husband were gone from the house each work day for approximately twelve (12) hours. The court concluded that, under the facts and circumstances present in the instant case, it was in Jayme's best interests to be placed with her father.
After our review of the evidence adduced in the trial court, we conclude that the trial court's judgment and the factual findings on which it is based are amply supported in the record.
We further note that this disposition coincided with the HCCS caseworker's recommendation and the guardian ad litem's recommendation. We again note that the guardian ad litem had previously recommended placement with the maternal grandmother, but changed that recommendation after the hearing and opined that he would prefer to see Jayme stay with her father. All things considered, we find nothing in the record of this case which would remotely suggest to us that the trial court's decision was arbitrary, unreasonable or unconscionable.
Michelle counter argues that the trial court failed to give sufficient consideration to the "family unity doctrine" in making its custody decision. We are not persuaded. From arguments made below and on appeal, we presume this doctrine expresses the desire and preference to keep families (or at least the children in the family) unified and together. We do not dispute that this merits consideration in a dependency proceeding and, in fact, the trial court expressly noted in its judgment entry that it would consider that factor when deciding the best interests of the children. Certainly, the primary goal of Juvenile Court proceedings is to reunite families when that goal is in fact warranted and attainable. We reject, however, any contention that this preference mandates a contrary result in the case sub judice.
It is well-settled law that the primary consideration in the disposition of children's cases is the best interest and welfare of that child. In re Pryor (1993), 86 Ohio App.3d 327, 332, 620 N.E.2d 973, 976;also see In re Congrove (Apr. 4, 2000), Ross App. No. 99CA2498, unreported; In re Jandrew (Dec. 29, 1997), Washington App. No. 97CA4, unreported. The trial court's judgment clearly reflects that principle and we find no error in its refusal to elevate considerations of family unity over Jayme's best interests.
Michelle also cites the decisions in Kasten v. Kasten (Nov. 23, 1987), Warren App. No. CA87-02-011, unreported, and In re Larimer (Nov. 16, 1998), Athens App. Nos. 98CA04 98CA05, unreported, for the proposition that "split custody" awards are disfavored in the law, and that siblings should be kept together whenever possible. Initially we note that these cases are not fully comparable to the cause sub judice. In Kasten andLarimer, we note that the custody awards were made pursuant to R.C.3109.04. Custody awards incident to domestic proceedings under R.C. 3109.04
are distinct and unrelated to dependency actions under R.C. Chapter 2151. In re Pryor, supra at 333, 620 N.E.2d at 976, fn. 4; also seePatton v. Patton (1963), 1 Ohio App.2d 1, 3, 203 N.E.2d 662, 663; In reSmall (1960), 114 Ohio App. 248, 249, 181 N.E.2d 503, 505; Moore v.Moore (Jan. 22, 1991), Gallia App. No. 89CA26, unreported. As noted by our colleagues in Kasten, supra, allocation of parental rights and responsibilities in a domestic proceeding requires a court to consider a child's interaction and relationship with siblings when making custody awards. See R.C. 3109.04(F)(1)(c). No such provision is included in R.C. Chapter 2151. Moreover, the trial court in the instant case was not resolving a dispute with parents on an "equal footing" as it might have done in a domestic case. In the case at bar, Michelle already had custody of Jayme and the child was adjudicated as dependent while in her care. The court's available disposition alternatives, other than the natural mother, were a maternal grandmother, the natural father, or institutional custody. Under the facts and circumstances present in the instant case, we find no abuse of discretion by the trial court to have placed Jayme with her natural father in this instance, nor do we believe that the court erred by opting for that choice over an alternative which would have kept the sibling group together.
Finally, Michelle cites us to a treatise — Paine, African Slavery in America (1775) 54 — and argues that the placement of Jayme in a home away from her sisters is something comparable to slave children being sold away "from each other in violation of sacred and natural ties." Suffice it to say, vast differences exist between forced human servitude, in which people are sold as chattel, and child dependency proceedings. In the case sub judice due process of law and the consideration of the best interest of the children guided the trial court's mission. The court placed Jayme in her father's temporary custody because she was adjudicated dependent and because the court believed this placement to be in her best interests. Jayme has not been torn away from her sisters nor, as Michelle suggests in her brief, are the girls being denied the opportunity to grow up together. The trial court's judgment mandates liberal visitation and, as set forth earlier, the long range goal is to reunify Jayme with her mother and two half-sisters if this goal can be accomplished within a reasonable time.
For all these reasons, we find appellant's assignment of error is without merit and is hereby overruled. We hereby affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed. Appellee shall recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
 ___________________________ Peter B. Abele, Presiding Judge
Harsha, J.: Concurs in Judgment Opinion with Opinion.
Kline, J.: Concurs in Judgment Opinion.
[1] The child's maternal grandmother, Virginia Brofford, and step-father, Rodney Ellis, also joined in filing the notice of appeal. However, for the sake of simplicity, we treat Michelle Ellis as the sole appellant for purposes of our review of this case.
[2] Brittany's natural father is Todd VanMeter whom Michelle met one year when visiting relatives in Maryland. Michelle was sixteen (16) at the time she became pregnant and the couple never married or lived together. The surname "Walden" was, apparently, Michelle's maiden name.
[3] Jayme's natural father, as mentioned earlier, is appellee James Blevins whom Michelle met while pregnant with Brittany. The two of them lived together for a period of time but never married.
[4] Virginia's natural father is Rodney Ellis whom Michelle met in 1997 and, eventually, married.
[5] Linda Olvera, a caseworker with HCCS, spoke with Mr. Brofford and asked him about these allegations. Brofford, however, would neither confirm nor deny them.
[6] Michelle Ellis was, at the time of the proceedings below, living with her mother and step-father (the Broffords) and her two daughters (Brittany and Virginia).
[7] Rodney Ellis was, at the time of the proceedings below, staying with his grandparents in Columbus and he had just recently started a new job. He expressed hope that Michelle and the children would eventually move to Franklin County and that they could all live together in a home of their own.
[8] Although this case is still pending in the trial court, an adjudication of dependency followed by an award of temporary custody constitutes a "final order" for purposes of R.C. 2505.02 and is appealable to the court of appeals. See In re Murray (1990),52 Ohio St.3d 155, 556 N.E.2d 1169, at the syllabus.